## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

**DONNA BATES,** *et al.,*
individually and on behalf
of all others similarly situated,

                         Plaintiffs,              Case No:  13-CV-00142

        vs.

**KERRY, INC.**

                    Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF PETITION
## FOR CLASS COUNSEL'S COSTS AND ATTORNEYS' FEES

---

### INTRODUCTION

This is a hybrid action alleging wage and hour claims as a collective action under 29 U.S.C. § 216(b) and a Fed. R. Civ. P. 23 class action under the wage and hour laws of the State of Wisconsin.

The parties have been engaged in this litigation since Plaintiffs filed their Collective and Class Action Complaint on February 27, 2013 alleging that Defendant had improperly classified Plaintiffs, who worked as Customer Care Representatives, as salaried exempt employees and therefore did not pay them overtime for hours worked over 40 in a workweek. (dkt. #1). Throughout the course of the litigation, Defendant has vehemently argued that the classification was proper and claimed that its analysis of Plaintiffs'

job duties and responsibilities, with the assistance of counsel, revealed that the classification as salaried exempt was appropriate.

Class Counsel has thoroughly and efficiently investigated and prosecuted this case on behalf of and for the benefit of the Plaintiffs and Settlement Class members. The parties engaged in extensive discovery, including Defendant's production and Plaintiffs' Counsel's review of approximately 800,000 pages of documents, in response to Plaintiffs' discovery requests. Additionally, Defendants served each individual Plaintiff with 48 Requests for Production and 12 Interrogatories. Class Counsel also prepared for and took the depositions of two of Defendant's designated corporate representatives, pursuant to Fed. R. Civ. P. 30(b)(6) and defended the depositions of all 9 Named and Opt-in Plaintiffs which included multiple sessions preparing each individual prior to their depositions. Furthermore, at the time of settlement on September 16, 2013, Plaintiffs had filed their Motion for Conditional Class Certification under the FLSA and completed substantial work on their Reply to Defendant's Response Brief, which was to be filed on August 29, 2013. (dkt. #47).

Class Counsel invested more than 700 hours litigating the claims of the customer care representatives and agreed to be responsible for all attorneys' fees and costs in the event of an adverse result. Through settlement, Counsel has secured $525,000 for the 96 opt-in Plaintiffs and Fed. R. Civ. P. 23 Class Members. (dkt. #138, Ex. 1). Settlement at this level,

with an average recovery per class member of $3,399.71, represents an outstanding result for the Class. Employees misclassified as exempt in similar cases throughout the country have accepted settlements with dollar values in the same range as those in this case. See Sewell v. Bovis Lend Lease LMB, Inc., 2012 U.S. Dist. LEXIS 53556, 29-30 (S.D.N.Y. Apr. 16, 2012)(class member's average recovery value approximately $2,465 after granting attorneys' fees of 33% of common fund in spite of the fact that the parties engaged in limited discovery for damage purposes only, did not engage in any briefing practice and went directly to mediation)[1]; Beckman v. KeyBank, N.A., 2013 U.S. Dist. LEXIS 60894 (S.D.N.Y. Apr. 29, 2013)(class member's average recovery value approximately $1,795 after granting attorneys' fees of 33% of common fund even when the case settled less than one month after the case was filed having engaged in no discovery or briefing practice).

Class Counsel faced significant risks in this litigation, based upon the twenty-one affirmative defenses asserted by Defendant as well as the risks incident to obtaining class certification and maintaining certification of the collective class. Counsel will continue to represent the interests of the Plaintiffs and Class Members even after the settlement is finally approved to ensure that the terms and conditions of the settlement are fully and completely satisfied.

---

[1] All unpublished opinions are attached as exhibits to the Declaration of Summer H. Murshid, dkt. 150.

Class Counsel accepted the case on a 33.33% contingency basis, exclusive of costs, bearing the entire risk in the event that there would be no recovery. Class Counsel petitions here for a substantially lesser amount, as this petition is only for 30% of the settlement fund plus actual costs. A contingency fee of 30% is reasonable and consistent with the percentage permitted in other common fund settlements and is consistent with market rates for this geographic area which range between 30% and 33.33%. Further, a 30% contingency recognizes the significant risks assumed by Class Counsel at the onset of the case in litigating this matter as well as the result achieved on behalf of the class. The award sought will fairly and reasonably compensate Class Counsel for their efforts to investigate and prosecute the Plaintiffs' and Class Members' claims, taking into account the quality, nature and extent of Class Counsel's efforts, the result and benefits achieved for the Plaintiffs, the FLSA Collective Class Members, the Rule 23 Class Members and economies provided the judicial system by achieving the results through settlement.

Most importantly, Notice was sent to Class Members informing them of the anticipated petition for fees and costs. Class Members were given 40 days to file objections to the settlement or the anticipated petition for fees and costs. At the time the Notice period closed on December 16, 2013, no objection had been filed by any class member. Accordingly, Class Counsel

respectfully requests that the Court award 30% of the common fund, or $157,500, plus $7,027.37 in actual costs.

## STATEMENT OF FACTS

### A.   Procedural History

Plaintiffs filed their Class and Collective Action Complaint against Defendant on February 27, 2013, alleging that Kerry improperly classified them as exempt employees and therefore failed to pay them overtime wages for hours worked over 40 in a work week, in violation of Wisconsin law and the Fair Labor Standards Act (FLSA). (dkt. #1). Defendant filed a Motion to Dismiss on April 24, 2013, claiming Plaintiffs failed to adequately plead a claim a under the FLSA, failed to adequately plead willfulness and requesting that the Court decline to exercise supplemental jurisdiction over the state law claims. (dkt. #19). After a series of negotiations with Defense Counsel, Plaintiffs amended the Complaint to add additional detail to address the concerns raised in Defendant's Motion to Dismiss and Defendant withdrew its motion. (dkt. #21, #23).

On July 15, 2013, the Plaintiffs filed their Motion for Conditional Class Certification and Brief with supporting documents. (dkt. #31-#42, 49-93). On August 15, 2013, Defendant filed its Response Brief and supporting documents, opposing Plaintiffs' motion. (dkt. #123). At the time the parties began discussing settlement on August 23, 2013, Plaintiffs had substantially completed their Reply Brief which was due only 6 days later, on August 29,

2013. (Declaration of Summer H. Murshid in Support of Class Counsel's Petition for Attorneys' Fees and Costs, ("Murshid Dec."), ¶ 2; dkt. # 149). The parties reached a settlement on September 16, 2013 and filed a motion to stay the remaining deadlines set by the Court's scheduling order. (dkt. #130). This Court preliminarily approved the parties' settlement agreement on October 30, 2013.  (dkt. #143).

B.    **Work Performed By Class Counsel.**

Class Counsel and legal professionals associated with Class Counsel have devoted more than 700 hours on behalf of the Plaintiffs and class members and have incurred approximately $7,027.37 costs. (Murshid Dec. ¶3).  Class Counsel also agreed to be responsible for all attorneys' fees and costs in the event of an adverse result.  (Murshid Dec. ¶3). Furthermore, Class Counsel's legal services in this matter have been significant. At the outset of the litigation, the Class Counsel immediately began collecting evidence necessary to secure conditional class certification of their 29 U.S.C. § 216(b) collective class. (Murshid Dec. ¶4). Counsel began the process by interviewing the Named and Opt-in Plaintiffs and drafting declarations in support of conditional certification. (Murshid Dec. ¶4). Counsel's early investigation also included, promptly after the parties 26(f) conference, serving Defendant with 5 interrogatories and 27 requests for production of documents. (Murshid Dec. ¶5). In response, Defendant produced approximately 800,000 pages of documents that Class Counsel reviewed.

(Murshid Dec., ¶5) This document review included job descriptions, personnel files, company handbooks, earnings reports, computer login and activity reports, door entry swipe records, company policy documents, company power points and other documents related to customer service policies and implementation by customer service representatives, time and work schedules, vacation and FMLA requests, time entry reports and thousands of emails. (Murshid Dec., ¶6). Additionally, Defendant sent individual discovery requests to each of the nine Named and Opt-In Plaintiffs, which was comprised of 48 Requests for Production and twelve Interrogatories per person. (Murshid Dec., ¶7). In responding to these requests, Plaintiffs' Counsel spent considerable time working with each Named and Opt-In Plaintiff to collect and identify responsive documents and answers and prepare the individual submissions to Defendant. (Murshid Dec., ¶8).

Beyond this, prior to filing the Plaintiffs' Motion for Conditional Class Certification Motion, the Class Counsel prepared for and conducted two full days of Fed. R. Civ. P. 30(b)(6) depositions of Defendant's corporate representatives Kelli Ritschel Boehle and Lynn Holt. (Murshid Dec., ¶9). In turn, Defendant took, and Class Counsel defended, the depositions of each of the Named and Opt-in Plaintiffs - Donna Bates, Catherine Steffa, Caren Christensen, Carol Duffy, Debra Hornbostel, Jill Rambo, Jane Slamp, Jo Ellen Smith, and Tammy Ziemer. (Murshid Dec., ¶10).

While preparing for continued litigation and briefing, Class Counsel spent a significant amount of time composing a damages model. (Murshid Dec., ¶11). After the parties agreed to engage in the negotiations process, Class Counsel analyzed Defendant's model and compared it to Plaintiffs' model in order reconcile the differences in each side's valuation of the case and ultimately reach a settlement agreement. (Murshid Dec., ¶11). Through settlement, Class Counsel obtained $525,000 for Class Members which results in an average payment of $3,399.71 per class member after the deduction of costs and fees. (Murshid Dec., ¶12).

Once the parties had negotiated settlement, Class Counsel calculated the allocation of the settlement to each class member on a *pro rata* basis, drafted and mailed out the notices to class members and fielded inquiries from existing and potential class members regarding the settlement. (Murshid Dec., ¶13).

Class Counsel will continue to represent the interests of the Class until the terms of the settlement are fully carried out. (Murshid Dec., ¶14). This will include providing a final allocation of the settlement funds to Defendant and being available for questions and concerns from class members throughout the period of time during which settlement checks are distributed. (Murshid Dec., ¶14).

<u>ARGUMENT AND AUTHORITIES</u>

I. **CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND COSTS IS CONSISTENT WITH THE REASONABLE MARKET RATE GIVEN THE RISKS OF THIS LITIGATION.**

Class Counsel's request for 30% of the common fund is in line with the 7th Circuit's approach. In <u>Synthroid Marketing Litigation</u>, the Court clearly explained that a district court, in deciding the appropriate fee levels, "must do their best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." 264 F.3d 712, 718 (7th Cir. 2001). As described below, because the request is within the market rate in this circuit and because of the risks associated with this litigation, Class Counsel respectfully requests that the Court grant this petitition and award $157,500 in fees and $7,027.37 in costs.

A. **Plaintiffs Are Entitled to Attorneys' Fees and Costs.**

The purpose of Section 216(b) of the FLSA is to ensure "effective access to the judicial process by providing attorneys fees for prevailing plaintiffs with wage and hour grievances." <u>Roofers Local 317 v. G & M Roofing & Sheet Metal Co.</u>, 732 F.2d 495, 502 (6th Cir. 1984). "Congress intended that the wronged employee should receive his full wages . . . without incurring any expense for legal fees or costs." <u>Id.</u> Consistent with these policies, in an action under the FLSA, the district court "<u>shall</u>, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Similarly,

attorneys' fees and costs are recoverable under the state wage and hour statutes at issue in this litigation. Wis. Stat. § 109.03(6).

Plaintiffs are the prevailing party in this litigation, and they are entitled to an award of attorneys' fees.  A plaintiff "prevails" when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  Farrar v. Hobby, 506 U.S. 103, 111-112 (1992).  This relief may come in the form of an enforceable judgment, a consent decree, or a settlement.  Id.; see also Rule 23(h), Fed. R. Civ. P. ("In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement.").  Here, the Plaintiff has secured substantial relief, as evidenced by the terms of the proposed Settlement Agreement.  Accordingly, Plaintiffs are the prevailing party and are entitled to an award of attorneys' fees and costs under the FLSA and applicable state law.

## B. Class Counsel's Request for Fees Is Reasonable Under the 7th Circuit's Market Based Approach

This Court has broad discretion to decide whether a requested fee is reasonable in a class action.  7B Alan Wright et al., Federal Practice and Procedure:  Federal Rules of Civil Procedure, § 1803.1 (3d ed & 2008 Supp.).  In the Seventh Circuit, "common fund principles properly control a case which is initiated under a statute with a fee-shifting provision, but is settled

with the creation of a common fund." <u>Florin v. Nationsbank of Georgia</u>, 34

F.3d 560, 564 (7th Cir. 1994) ("<u>Florin I</u>"). In fact, "when a case results in the

creation of a common fund for the benefit of the plaintiff class, the common

fund doctrine allows plaintiffs' attorneys to petition the court to recover its

fees out of the fund." <u>Id.</u> at 563. The court then determines the amount of

attorneys' fees that plaintiff's counsel may recover from this fund. <u>Id.</u> The

common fund doctrine is based on the notion that "all those who have

benefitted from the litigation should share its costs.'" <u>Id.</u> at 563 (citation

omitted).

The Seventh Circuit uses a "market-based approach" to set the

percentage of the total settlement from the common fund to be awarded as

reasonable attorney's fees. Under this approach, the district court "is

required to estimate the terms of a contract [that] private plaintiffs would

have negotiated with the attorneys at the outset of the case, with reference to

benchmarks, such as the actual agreements between the class members and

their attorneys, data from other suits, and auctions for legal services." 7B

Alan Wright <u>et al.</u>, <u>Federal Practice and Procedure:  Federal Rules of Civil</u>

<u>Procedure</u>, § 1803.1 (3d ed & 2008 Supp.). In applying this framework, "it is

not the function of judges in fee litigation to determine the equivalent of the

medieval just price. It is to determine what the lawyer would receive if he

were selling his services in the market rather than being paid by court order."

<u>Steinlauf v. Continental Illinois Corp.</u>, 962 F.2d 566, 568 (7th Cir. 1992). The

"touchstone of the analysis" is what paying clients would have compensated the attorneys in an open market for legal services: "The object in awarding a reasonable attorney's fee, as we have been at pains to stress, is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible." Id. at 572.  Ultimately, "Class Counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." Id. at 572-73 (noting that "in personal injury suits the usual range for contingent fees is between 33 and 50 percent. . . .").  This can be proven through "testimony or statistics concerning the fee arrangements in commercial litigation comparable to the present suit." Id.

The Seventh Circuit Court of Appeals emphasized the necessity of determining the market rate for attorney fees in class-action common-fund cases in In re Synthroid Marketing Litigation, 264 F.3d 712 (7th Cir. 2001) (Synthroid I).  Synthroid I was a class action suit brought by consumers and health insurers against a pharmaceutical company asserting various claims relating to misrepresentations the manufacturer made about the drug.  The defendant agreed to pay the consumer class $88 million and $46 million to the insurer class.  The district court approved the settlement but awarded fees "at a level significantly below what the lawyers had requested." Id. at 715.  The district court reasoned that the large settlement created a

"megafund" and that each class' attorneys was entitled only to 10% of the settlement.  Id. at 717.

The Seventh Circuit reversed, stating:  "We have held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."  Id. at 718 (emphasis added)(citations omitted). Ultimately, "[t]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." Id. at 721.  In Synthroid II, the Seventh Circuit elaborated that the fee award must be made with "reference to arrangements that satisfy willing buyers and sellers rather than the compensation that a judge thinks appropriate as a matter of first principle."  In re Synthroid Marketing Litigation, 325 F.3d 974, 976 (7th Cir. 2003) (Synthroid II).  In applying this standard, the judge is *not* required to "monitor how many hours the lawyers prudently devoted to the case. The client cares about the outcome alone." Id. at 979-980.

Four years later, the Seventh Circuit re-affirmed its commitment to the market analysis for awarding attorney fees in Taubenfeld v. AON Corporation, 415 F.3d 597 (7th Cir. 2005). There, a single class member objected to a settlement agreement in a securities fraud class action lawsuit,

which awarded Plaintiffs' Counsel 33.3% of the total settlement as attorney's fees. 415 F.3d at 598.  The class member argued that the district court relied solely on the "benchmarks" set forth in the <u>Synthroid</u> cases and failed to consider case-specific factors, such as the risk involved and the amount of recovery. <u>Id.</u> at 599.  The Seventh Circuit affirmed the district court because the objecting class member failed to articulate why the fee award was not an accurate reflection of the market rate for attorneys' fees in this type of litigation. <u>Id</u>. (citations omitted). The court concluded that the district court properly applied the market rate standard when approving the settlement agreement and fee award: "[L]ead Counsel's memorandum to the district court in support of its application for fees and expenses contained an analysis of the strength of the class' case, data on fees awarded in other class actions in the jurisdiction, and evidence of the quality of legal services rendered—the same type of evidence needed to mimic the market per <u>Synthroid</u>." <u>Id.</u> at 600.

More recently, the Seventh Circuit rejected a district court fee award that gave undue weight to the degree of success "without factoring the value that the market would have placed on Counsel's legal services had its fee been arranged at the outset." <u>Sutton v. Bernard</u>, 504 F.3d 688, 694 (7th Cir. 2007).  The court again emphasized that "[i]n deciding fee levels in common fund cases, we have consistently directed district courts to do their best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'"

Id. at 692 (quoting Synthroid I, 264 F.3d at 718). Furthermore, the Seventh
Circuit concluded that the district court erred in refusing to consider the risk
of nonpayment faced by plaintiffs' counsel:

> We have said that the market price for legal fees
> "depends in part on the risk of nonpayment a firm
> agrees to bear, in part on the quality of its
> performance, in part on the amount of work
> necessary to resolve the litigation, and in part on
> the stakes of the case."

Id. at 693 (citation omitted).

The Seventh Circuit again reaffirmed this approach in Williams v.
Rohm & Haas Pension Plan, 658 F.3d 629 (7th Cir. 2011). In that case,
objectors argued that the district court failed to consider class counsel's
loadstar when it approved an attorney's fee of $43.5 million. Id. at 635. The
Court quickly dismissed this argument stating that "[w]e need not spend
much time on the district court's methodology: the court recognized that its
task was to assign fees in accord with a hypothetical *ex ante* bargain, see
Synthroid, 264 F.3d at 718; it weighed the available market evidence, see
Taubenfeld, 415 F.3d at 599; and it assessed the amount of work involved,
the risks of nonpayment, and the quality of representation, see Synthroid,
264 F.3d at 721." The Court concluded that there was no abuse of discretion
by the district court not considering the loadstar cap, as the court found that
"a pure percentage approach best replicated the market for ERISA class
action attorneys." Id.

Analysis of the <u>Synthroid</u> factors here confirms the reasonableness of an award of fees amounting to 30% of the common fund plus actual costs. Class Counsel's fees are consistent with rates of other lawyers in the community, they are consistent with fee awards from this Court in class action cases, and are appropriate given the risks taken in this case and the result achieved for the Class. Class Counsels' request for 30%, in light of the 30-33.33% market rate, is reasonable.

### 1.   Class Counsel's Rate of 30% is Consistent With Rates of Other Lawyers in the Community.

In the instant case, Class Counsel seeks an award of attorneys' fees and costs that is consistent with what a willing client would agree to pay an attorney to take this type of case at the inception of the representation. Specifically, Class Counsel seeks an award of fees and costs that represents thirty percent (30%) of the $525,000 common fund in addition to a recovery of $7,027.37 in costs.  This request is less than the fee agreements, by which Plaintiffs agreed to pay Class Counsel thirty-three and one third percent (33.33%) of the total amount of any recovery, plus actual costs.

As clearly set forth in the accompanying Declarations of Attorneys Jason Knutson, Brenda Lewison and Noah Reinstein, 30% is consistent with the market rate of 30-33.33% for legal services in similar, complex litigation in the Federal Courts in Wisconsin. (Murshid Dec. at ¶17-19; dkt. #150;

Declaration of Jason Knutson; dkt. #152; Declaration of Brenda Lewison; dkt. #153; Declaration of Noah Reinstein; dkt. #154).

> ## 2.  Class Counsel's Rate of 30% is Consistent With Rates in Similar Matters Approved by This Court

That 30% of the common fund is consistent with the market rate for similar matters is further supported by petitions for attorneys' fees approved by this Court in other FLSA and class action matters.

This District applied the Seventh Circuit's market based approach to fees in <u>Goodell, et al. v. Charter Communications, LLC, et al.</u>, 2010 U.S. Dist. LEXIS 85010 (W.D. Wis. August 17, 2010, Crabb, J.)  The Court in <u>Goodell</u>, observed,

> The Court of Appeals for the Seventh Circuit has held in a number of cases that when common funds are involved, the district courts determine a reasonable fee to be paid out of the common fund, and in doing so, considers the value the marketplace would have assigned to the case at the outset. <u>E.g.</u>, <u>Sutton v. Bernard</u>, 504 F.3d 688, 692, 693 (7th Cir. 2007). It does not undertake an assessment of the fees sought in relation to the results obtained."

<u>Id</u>. at *3. By contrast, Judge Crabb explained, the fee is "premised on the idea that the plaintiffs and their counsel share in the litigation's costs." <u>Id</u>. at *3 (citing <u>Sutton</u>, 504 F.3d at 693).

In <u>Goodell</u>, counsel petitioned the Court for approval of attorneys' fees of 30% of a common fund of $18 million, or $5.4 million. In that case, after only 6 months, counsel achieved this result with relatively little investment in the case. The matter settled before class certification or summary

judgment motions. <u>Goodell</u> at *4. With regard to the market rate, Judge Crabb noted that "the only evidence is what plaintiffs have submitted, which is that class action fee arrangements with well qualified counsel, such as plaintiffs' counsel in this case, <u>are rarely set lower than one-third of the recovery.</u>" <u>Id.</u> (emphasis added).[2]

In other FLSA cases that have settled prior to significant motion practice, this Court has similarly approved attorneys' fees of 30% of the common fund. For example, in <u>Andler v. Associated Bank Corp.</u>, 3:11-cv-79 (W.D. Wis., Oct. 30, 2012, Conley, J), the Court approved attorneys' fees of 30% of gross settlement, where neither a class certification nor a summary judgment motion had been filed. (dkt. #70). In that case, counsel achieved a settlement approximately eight months after filing the complaint. <u>Id.</u>

Here, similar to the <u>Andler</u> and <u>Goodell</u> cases, Class Counsel engaged in significant and intense work in a short period of time. Class Counsel invested a large amount of time conducting depositions and reviewing the

---

[2] This Court similarly approved fees based on a percentage of the common fund in <u>Sjoblom v. Charter Commc'ns</u> LLC, 2009 U.S. Dist. LEXIS 6395, the case that preceded litigation in the <u>Goodell</u> case. There the Court approved of $8,444,145.22, representing 30% of the $28.5 settlement fund less costs. This Court has issued orders approving 33% of the common fund in recent years and while Class Counsel does not petition the Court for that amount in this case, these cases reinforce this Court's acceptance of awarding a percentage of the common fund as the market rate for attorneys' fees in class cases. <u>See Wittemann et al. v. Wisconsin Bell, Inc.,</u> 9-cv-440 (W.D. Wis., March 11, 2011, Crocker, J.), Order approving attorneys' fees of 33% of class action settlement; <u>Wilcox et al. v. Alternative Entertainment, Inc. et al.,</u> Case No. 3:09-cv-659 (W.D. Wis., Mar. 7, 2011, Crabb J.), Order approving attorneys' fees of 33% of class action settlement; <u>See also Berndt v. Cleary Building Corp.</u>, Case No. 3:11-cv-791, (W.D. Wis., Dec. 5, 2013, Conley J.), Order approving attorneys' fees of 30%.

800,000 pages of documents produced by Defendants. Furthermore, as was the case in <u>Andler</u> and <u>Goodell</u>, Class Counsel spent time interviewing and working with Plaintiffs to respond to Defendant's 432 requests for production (48 to each Plaintiff) and 108 interrogatories (12 to each Plaintiff). Unlike <u>Andler</u>, Class Counsel had fully briefed conditional certification and was only six days away from filing its Reply to Defendant's Brief in opposition.

As discussed further below, this case also presented substantial risks, not present in <u>Goodell</u>, but similar to those in <u>Andler</u>, subjecting the Class and Class Counsel to the risk of potentially achieving no payment whatsoever because of the nature and difficulty of misclassified cases. Given all of these factors, because both the Seventh Circuit and the Western District of Wisconsin endorse a market based approach to fees in class matters, and because the Class Counsel's petition for fees and costs of 30% of the settlement fund is reasonable given both the local market and the risks appreciated in the case, Class Counsel's petition should be approved.

### 3. Class Counsel's Rate of 30% is Reasonable Given the Risks Presented by Continued Litigation of This Matter and the Results Achieved for the Class.

There are other compelling factors that support the relief requested in this petition.  This case yielded an extremely favorable result for class members, who will recover an average of $3,399.71 per class member.  More importantly, this result followed in the face of substantial risk.  By definition, complex class-action litigation is a risky venture.  <u>See</u> <u>White v. Sundstran</u>

Corp., 256 F.3d 580, 586 (7th Cir. 2001)(" attorneys already supply risk-bearing services in class actions.  They invest legal time on a contingent fee, taking the risk of failure in exchange for a premium award if the class prevails.").  Many cases are decided (and dismissed) at the certification (or decertification) stage given the exacting standard of proof presented by Rule 23 and 29 U.S.C. § 216(b). See Mooney v. Aramco Services Co., 54 F.3d 1207, 1214 (5th Cir. 1995); In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.2d 283, 283, 321 (3d Cir. 1998)(noting inherent risk of decertification in class action litigation); See also Shayler v. Midtown Investigations. Ltd., 2013 U.S. Dist. LEXIS 29540 (S.D.N.Y. Feb. 27, 2013) (denying motion to certify class of security guards allegedly misclassified as independent contractors); Trawinski v. KPMG LLP, 2012 U.S. Dist. LEXIS 183366 (S.D.N.Y. Dec. 21, 2012) (denying motion to certify class of transaction associates allegedly misclassified as exempt administrators); Morano v. Intercontinental Capital Group, Inc., 2012 U.S. Dist. LEXIS 100830 (S.D.N.Y. July 17, 2012) (decertification of the FLSA collective in off the clock case brought by loan officers); Romero v. HB. Auto Grp., Inc., 2012 U.S. Dist. LEXIS 61151; (S.D.N.Y. May 1, 2012) (denying motion to certify class of auto dealership employees in misclassification case); Zivali v. AT &T Mobility, LLC, 784 F. Supp. 2d 456 (S.D.N.Y. 2011) (decertification of collective in off the clock case); Walker v. Bankers Life & Cas. Co., 2008 U.S. Dist. LEXIS 60593 (N.D. Ill. July 28, 2008)

(decertification of FLSA collective action in case involving agents who sold Defendant's insurance products classified as independent contractors). See also Espenscheid v. DirectSat USA, LLC, 705 F.3d 770 (7th Cir. 2013).

Setting aside the attorney manpower involved, the cost of litigating a lawsuit of this magnitude is substantial. All of these risks (and costs) were incurred in the face of the distinct possibility that this lawsuit simply might not succeed. This high-risk factor also justifies the percentage of recovery sought in this petition. Many misclassification cases are dismissed on the merits at the summary judgment stage. See, e.g., Bacon v. Eaton Aeroquip, LLC, 2013 U.S. Dist. LEXIS 75636 (E.D. Mich. May 30, 2013); Reich v. County of Cook, 2012 U.S. Dist. LEXIS 116377 (N.D. Ill. Aug. 14, 2012); Sanfratello v. Howell Tractor & Equip., LLC, 2011 U.S. Dist. LEXIS 79056 (N.D. Ind. July 20, 2011); Ramos v. Baldor Specialty Foods, Inc., 2011 U.S. Dist. LEXIS 66631, (S.D.N.Y. June 16, 2011); Marting v. Crawford & Co., 2006 U.S. Dist. LEXIS 10509 (N.D. Ill. Mar. 14, 2006); Roe-Midgett v. CC Servs., 2006 U.S. Dist. LEXIS 22374 (S.D. Ill. Mar. 29, 2006); Franklin v. Breton Int'l, inc., 2006 U.S. Dist. LEXIS 88893 (S.D.N.Y. Dec. 11, 2006); Tomney v. International Ctr. for the Disabled, 357 F. Supp. 2d 721 (S.D.N.Y. 2005).

Finally, and perhaps most significant, no class member has objected to Class Counsel's Petition for Attorneys' Fees and Costs. Counsel informed class members that Counsel anticipated filling a petition for fees of 33% of

the settlement in addition to costs. The period within which to object closed

on December 16, 2013 and no class members objected to that amount.

Counsel now petitions for a lesser amount, 30% of the settlement for fees in

addition to costs, allowing a greater percentage of the settlement to remain

with the Class. Indeed, the average claim for each class member went from

$3,220 (had Class Counsel petitioned for 33%) to $3,399 under the current

petition for only 30%.

### 4.    Class Counsel's Petition for Costs is Reasonable

Class Counsel petitions the Court for an award of $7,027.37 in actual

costs. An itemization of these costs is attached as Exhibit B to the

Declaration of Attorney Murshid submitted in support of this motion. All of

these costs were reasonably incurred in the discovery process and in notice

mailings to class members.

### CONCLUSION

In summary, the market rate for representation of similar litigation, at

the "front end," is exactly what Class Counsel bargained for in the instant

case.  This result is consistent with the excellent results achieved for the

Class members, and in consideration of the substantial risk that Class

Counsel faced as it worked towards that result.  This result is also consistent

with similar fee awards in other wage and overtime cases in this Court along

with the standard fee in the prevailing market.  For these reasons, Class

Counsel respectfully requests that this Court enter an appropriate order

awarding Class Counsel thirty percent (30%) of the common fund, or

$157,500 plus $7,027.37, as a reasonable award of attorneys' fees and costs.

Respectfully submitted this 19th day of December, 2013.

Attorneys for Plaintiff

By:   *s/Summer H. Murshid*
**HAWKS QUINDEL, S.C.**
Summer Murshid, State Bar No. 1075404
Email: smurshid@hq-law.com
Larry A. Johnson, State Bar No. 1056619
Email: ljohnson@hq-law.com
B. Michele Sumara, State Bar No. 1010181
Email: msumara@hq-law.com
Post Office Box 442
Milwaukee, Wisconsin 53201
Telephone: 414-271-8650
Facsimile: 414-271-8442